NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

|  |  |
|---|---|
| ANNETTE R.J. PHILLIPS and SHERROD PHILLIPS,<br><br>　　　　　　Plaintiffs,<br>　v.<br><br>FIRSTBANK PUERTO RICO,<br><br>　　　　　　Defendant. | Civ. No. 13-105<br><br>**OPINION** |

THOMPSON, U.S.D.J.[1]

### INTRODUCTION

This matter comes before the Court upon Defendant's Motion for Summary Judgment.

(ECF Nos. 72–74.) Plaintiffs oppose (ECF Nos. 84–86) and seek leave to amend their complaint

(ECF No. 89). The Court has decided the motions on the written submissions of the parties,

pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Defendant's

Motion for Summary Judgment is granted, and Plaintiffs' Motion to Amend is denied.

### BACKGROUND

Plaintiffs Annette R.J. Phillips ("Annette") and Sherrod Phillips (collectively "Plaintiffs")

are citizens and residents of the Virgin Islands, and Defendant FirstBank Puerto Rico

("FirstBank" or "Defendant") is a Puerto Rican corporation with a principal place of business in

Puerto Rico. (Compl. ¶ 3, ECF No. 1). Plaintiffs are a married couple. (*Id.* ¶ 1). On January 26,

1987, Annette's mother, Angelita Jennings, became the record owner of 110-1 Estate Frydenhoj,

No. 3 Red Hook Quarter, St. Thomas, Virgin Islands ("the Frydenhoj Property"). (Def.'s

---

[1] The Hon. Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

Statement of Undisputed Material Facts ("SMF") ¶ 1, ECF No. 73.) On May 2, 1988, Annette and her sister, Edith Rose Jennings, became owners as joint tenants of 294-D Hospital Ground, St. Thomas, Virgin Islands ("the Hospital Ground Property"). (*Id.* ¶ 3.)

In 1993, Annette and her mother, Angelita, agreed to build a two-story home on the Frydenhoj Property, where each would live on a separate floor of the house. (Pls.' Suppl. SMF ¶¶ 1–2, ECF No. 84-1.) To fund construction of the house, on September 8, 1994, Annette and Angelita executed a mortgage with First Virgin Islands Federal Savings Bank to secure a $228,000 loan ("1994 Mortgage"). (Def.'s SMF ¶¶ 4–5; Pls.' Suppl. SMF ¶ 3).[2] The 1994 Mortgage encumbered both the Frydenhoj Property and the Hospital Ground Property as collateral for the loan. (Def.'s SMF ¶ 4.) Annette paid for the drawings of the house to be built on the Frydenhoj Property and negotiated with the contractor to build the house, and she and Angelita moved in as planned in 1995. (Pls.' Suppl. SMF ¶¶ 4–5.)

On or about June 30, 2001 Annette and Angelita entered into a Loan Modification Agreement ("2001 Modification") with Defendant FirstBank as successor in interest to First Virgin Islands Federal Savings Bank. (Def.'s SMF ¶ 6.) The 2001 Modification modified the terms for payment and the applicable interest rate and removed the Hospital Ground Property from the lien of the 1994 Mortgage. (*Id.*; Def.'s SMF, Ex. G ("2001 Modification"), ECF No.

---

[2] Edith Rose Jennings's relationship to this mortgage is disputed. She is listed on the original 1994 "Construction Security Interest Mortgage" document as one of the mortgagors or borrowers, although her signature line is not specifically designated for a "Borrower," unlike the lines on which Annette and Angelita signed. (Def.'s SMF, Ex. E ("1994 Mortgage"), ECF No. 73-5.) However, in her deposition, Annette contended that Edith did not sign the original mortgage and was not a party to it. (Def.'s SMF, Ex. F, Tr. at 11:1–12:21, ECF No. 73-6; Annette R.J. Phillips Dep. 11:1–13:13, ECF No. 85.) Based on the undisputedly authentic copy of the mortgage document provided to the Court, Edith was a party to the mortgage. The Court notes that Defendant correctly explains, "The Mortgagor may or may not be an obligor on the Note." (Def.'s Reply at 2 n.2, ECF No. 88.)

73-7.) Like the original 1994 Mortgage, the 2001 Modification was signed by all relevant parties and properly recorded. (Def.'s SMF ¶¶ 4, 6.)

On June 12, 2003, Annette and Angelita jointly signed and submitted a standard Uniform Residential Loan Application ("URLA") to FirstBank for a streamline, rate reduction refinancing of the 1994 Mortgage. (*Id.* ¶ 7; Def.'s SMF, Ex. H ("2003 URLA"), ECF No. 73-8.) As part of the application process, both Annette and Angelita signed a package of standard forms and disclosures: (1) Borrower Signature Authorization; (2) Right to Receive Copy of an Appraisal; (3) Reverification Authorization; (4) Affidavit of Occupancy; (5) Fair Credit Reporting Act Disclosure; (6) Equal Credit Opportunity Act Disclosure; (7) Federal Truth in Lending Disclosure Statement; (8) Good Faith Estimate; and (9) Servicing Disclosure Statement. (Def.'s SMF ¶ 8; Def.'s SMF, Ex. I ("Composite of 2003 Mortgage Loan Docs."), ECF No. 73-9.)[3] In deposition, Annette verified the authenticity of her signature on page three of the URLA as well as the accompanying forms and disclosures. (Def.'s SMF ¶¶ 7–8; Annette R.J. Phillips Dep. 30:2–31:8 (verifying URLA signature); 31:15–34:12 (verifying the appearance of her signature on all other documents, but reiterating that she did not recall signing some of the disclosures).)

As part of the Borrower Authorization, Annette authorized FirstBank to "order a consumer credit report and verify other credit information, including past and present mortgage and landlord references." (Composite of 2003 Mortgage Loan Docs., Borrower Signature Authorization.)[4] FirstBank obtains credit reports by submitting the applicant's information to an

---

[3] At the time of signing these documents, it appears Plaintiff Annette R.J. Phillips was using her then-marital name, Annette J. Raimer.

[4] Pursuant to the Fair Credit Reporting Act disclosure Annette signed, she was also informed, "An investigation will be made as to the credit standing of all individuals seeking credit in this application. The nature and scope of any investigation will be furnished to you upon written request made within a reasonable period of time. In the event of denied credit due to an unfavorable consumer report, you will be advised of the identity of the Consumer Reporting Agency making such report and of right to request within sixty (60) days the reason for the

independent credit reporting service that compiles information and credit scores from three credit reporting sources. (Def.'s SMF ¶ 9.) Based on the June 17, 2003 Credit Report returned for Annette J. Raimer, Annette's score was well below the minimum required by Fannie Mae for approval of the streamline rate reduction refinance. (*Id.*; *see* Def.'s SMF, Ex. J ("June 2003 Credit Report"), ECF No. 73-10.) Angelita, however, had a qualifying score and the refinancing was approved with Angelita as the sole borrower. (Def.'s SMF ¶ 10.)

Angelita executed a new mortgage with FirstBank and closed on the refinancing on September 24, 2003. (*Id.*; *see also* Def.'s SMF, Ex. K ("2003 Mortgage"), ECF No. 73-11.) Annette was personally present at the closing and signed the new mortgage as a witness to the signature of Angelita, the sole borrower. (Def.'s SMF ¶ 10; Annette R.J. Phillips Dep. 35:8–20, 36:9–11, 110:21–112:8.) As part of the 2003 refinancing, the 1994 Mortgage, as modified by the 2001 Modification, was cancelled, released, and discharged. (Def.'s SMF ¶ 12; Def.'s SMF, Ex. L ("Release of Mortgage"), ECF No. 73-12.) The Release of Mortgage was dated September 17, 2003, and was duly recorded on September 30, 2003. (Release of Mortgage.) As a result of the release, Annette's obligations as a co-borrower under the 1994 Mortgage Note were satisfied and discharged, ending her contractual relationship with FirstBank. (Def.'s SMF ¶ 12.)

To prepare her 2003 taxes, at the request of her tax preparer at H&R Block, Annette obtained a copy of a mortgage interest statement from Angelita. (Def.'s SMF ¶ 13; Annette R.J. Phillips Dep. 52:8–55:19.) The mortgage interest statement only had Angelita's name on it. (Def.'s SMF ¶ 13; Annette R.J. Phillips Dep. 52:8–14.) Until 2003, the mortgage interest statement had reflected both Annette's name and Angelita's name. (Annette R.J. Phillips Dep. 53:3–20.) Annette recalls her mother giving her the 2003 statement and telling her with regard to

---

adverse action . . . ." (Composite of 2003 Mortgage Loan Docs., Fair Credit Reporting Act Disclosure.)

her taxes, "put it in half" and "that's the way the bank does it now." (Def.'s SMF ¶ 13; Annette R.J. Phillips Dep. 52:8–20, 56:7–23.) Annette contends that she had no knowledge of the refinancing and when she witnessed her mother's signature, no one told her she was ineligible for the mortgage because of her credit, she did not get to read the documents placed in front of her, she thought she was signing a rider, and she did not know her name was being removed and her interest in her home affected. (Pls.' Suppl. SMF ¶¶ 9–12; Annette R.J. Phillips Dep. 44:14–47:25, 51:2–5, 82:1–7; 110:21–112:8.)[5]

Annette made continuous payments to FirstBank for her share of the 1994 Mortgage from 1994 until 2009. (Pls.' Suppl. SMF ¶ 7; Annette R.J. Phillips Dep. 88:9–90:21.) Sometime in 2008, Annette received notification on her credit report from Equifax that the mortgage had been paid off. (Pls.' Suppl. SMF ¶ 8; Annette R.J. Phillips Dep. 42:3–44:13). She called Equifax to dispute this, believing she was removing something erroneous from her credit report. (Annette R.J. Phillips Dep. 43:13–17.) In or about 2009, Angelita initiated a court proceeding to evict Plaintiffs from their home on the Frydenhoj Property. (Pls.' Suppl. SMF ¶ 13). The Frydenhoj Property remains solely owned by Angelita. (Def.'s SMF ¶ 14; Pls.' Suppl. SMF ¶ 13.) Annette stopped making payments to FirstBank in connection with the mortgage in 2009. (Pls.' Suppl. SMF ¶ 7; Annette R.J. Phillips Dep. 88:9–90:21.)

---

[5] In the original Complaint, Annette alleged that her signature was forged on these documents. (Compl. ¶ 10 ("[T[he name and signature were not hers and must have been forged.").) Under Virgin Islands law, "[i]f the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized . . . ." 11A V.I.C. § 3-308(a). "[T]his presumption may be overcome at the summary-judgment stage by that party's unequivocal denial of that signature's validity." *Bank of Nova Scotia v. Roy*, 2013 WL 684452, at \*9 (D.V.I. Feb. 25, 2013) (citing *Ingersoll-Rand Fin. Corp. v. Anderson*, 921 F.2d 497, 499 (3d Cir. 1990)). In deposition, Annette clarified that her authentic signature did actually appear on the documents, but Defendant issued a mortgage to Angelita as sole borrower on the basis of Annette's financial information and income, and that was the act of forgery or theft. (Annette R.J. Phillips Dep. 62:22–66:8.) The Court thus finds these signatures were authentic.

Annette initiated an investigation into what happened with her mortgage through the Division of Banking and Insurance of the Lieutenant Governor's Office ("the Division"), and she received a response to her inquiries in October 2012. (*See* Pls.' Ex. 5, ECF No. 86.) She was told that the Division's investigation revealed the bank found "her credit could not support the refinance" and therefore "the bank approved the refinancing of the loan solely in the name of Angelita Jennings." (Pls.' Ex. 5, October 11, 2012 Letter, ECF No. 86.) Thereafter she filed a police report alleging forgery by her mother, Angelita, in connection with the 2003 refinancing. (Pls.' Ex. 5, Police Report, ECF No. 86.) Annette contends that the bank relied on an erroneous credit report to find her ineligible for the mortgage. (Pls.' Suppl. SMF ¶ 16.)

Plaintiffs filed the instant Complaint on November 9, 2013. (ECF No. 1.) The Complaint alleged that Defendant's actions and/or omissions constituted (1) breach of contract, (2) fraud, (3) negligence, (4) breach of the implied covenant of good faith and fair dealing, and (5) unjust enrichment. (Compl. ¶ 20). Defendant answered on April 28, 2014. (ECF No. 21.) On June 11, 2014, Defendant moved for judgment on the pleadings (ECF Nos. 25, 26), and discovery was thereafter stayed for almost three years while the motion remained pending (ECF No. 34). The case was transferred to Judge Anne E. Thompson on April 4, 2017. (ECF No. 35.) On June 2, 2017, this Court entered partial judgment on the pleadings in favor of Defendant, dismissing both Plaintiffs' tort claims for fraud and negligence and dismissing Plaintiff Sherrod Phillips's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (ECF Nos. 47, 78.) The only remaining claims against Defendant FirstBank are Annette's claims for breach of contract and breach of the implied covenant of good faith and fair dealing and both Plaintiffs' claims for unjust enrichment.

After completing discovery, Defendant moved for summary judgment on August 15, 2017. (ECF Nos. 72–74.) Plaintiffs requested and received repeated extensions to respond due to

the hurricanes in the Virgin Islands (*see* ECF Nos. 77, 79, 80, 81, 83), and timely filed opposition on November 20, 2017 (ECF Nos. 84–86). On December 9, 2017, beyond the deadline in the Court's final scheduling order (ECF No. 83), Plaintiffs moved to amend their complaint. (ECF No. 89.) Defendants oppose that motion on substantive and procedural grounds. (ECF No. 93.) The Court now considers the motions.

## LEGAL STANDARDS

### I. Motion for Summary Judgment

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The non-moving party must "point to concrete evidence in the record" that shows the existence of a genuine issue of material fact and may not rely on "mere allegations, conclusions, conjecture, and speculation" to defeat summary judgment. *Abney v. Univ. of the V.I.*, 2016 WL 2349108, at *4 (D.V.I. May 3, 2016).

7

Where a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," the court in its discretion may consider said facts undisputed and grant summary judgment on that basis. Fed. R. Civ. P. 56(e); *see also* L. Civ. R. 56.1(b), (d). Even where undisputed or unopposed, however, "[w]here the moving party has the burden of proof on the relevant issues, . . . the district court must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law." *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990).

## II.   Motion to Amend

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend the pleadings should generally be given freely when justice so requires. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP* ("*Great Western*"), 615 F.3d 159, 174 (3d Cir. 2010); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). The Court may deny a motion to amend where there is undue delay, bad faith, prejudice to the opposing party, or amending the pleading would be futile. *Alvin*, 227 F.3d at 121. "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Id.* (citing *Smith v. NCAA*, 139 F.3d 180, 190 (3d Cir. 1998)); *Great Western*, 615 F.3d at 175. "The complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Great Western*, 615 F.3d at 176 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## DISCUSSION

### I.   Motion for Summary Judgment

As an initial matter, the Court notes that Plaintiffs have not responded to Defendant's Statement of Undisputed Material Facts (ECF No. 73), but have supplied their own unrefuted Supplemental Statement of Facts (ECF No. 84-1). Pursuant to Local Civil Rules 56.1(b) and (d), the Court will treat all such unrefuted facts as undisputed.

Defendant first moves for summary judgment on all of Plaintiffs' remaining claims—breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment—on the basis of the applicable statute of limitations. All three claims sound in contract or quasi-contract. *See, e.g., Abney*, 2016 WL 2349108, at *7 ("Courts in the Virgin Islands have found that '[w]here a duty of good faith arises, it arises under the law of contracts.'" (quoting *Mendez v. Coastal Sys. Dew, Inc.*, 2008 WL 2149373, at *3 (D.V.I. May 20, 2008))); *Cacciamani & Rover Corp. v. Banco Popular De P.R.*, 61 V.I. 247, 251 (2014) (noting that unjust enrichment is an equitable quasi-contract cause of action). These claims are therefore governed by the statute of limitations for contract claims, which is six years under Virgin Islands law. 5 V.I.C. § 31(3)(A).

Traditionally under Virgin Islands law the "statute of limitations begins to run upon the occurrence of the essential facts which constitute the cause of action." *Simmons v. Ocean*, 544 F. Supp. 841, 843 (D.V.I. 1982); *see also Vanterpool v. Gov't of V.I.*, 63 V.I. 563, 594 n.19 (2015) (noting that the same principles which govern when the statute of limitations begins to run on contract causes of action apply to unjust enrichment claims).

"[T]he law of the Virgin Islands has in certain circumstances incorporated the Discovery Rule to delay the running of a statute of limitations" where the injury or its cause is not readily apparent to the plaintiffs at the time the injury occurs. *In re Tutu Wells Contamination Litig.*, 909 F. Supp. 980, 984 (D.V.I. 1995). "Under the rule, the statute of limitations will start to run at the time that two conditions are satisfied: (1) when the plaintiff knew or should have known that he had suffered a harm *and* (2) when the plaintiff knew or should have known the cause of his injury." *In re Tutu Wells*, 909 F. Supp. at 985; *see also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994) ("[A] claim accrues . . . upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong."). These two conditions are

9

judged using an objective, reasonable person standard. *Id.* "[T]he focus is not on the plaintiff's actual knowledge, but rather whether the knowledge was known, or through the exercise of diligence, knowable to the plaintiff." *Santiago v. V.I. Hous. Auth.*, 57 V.I. 256, 273 (2012) (internal quotations omitted). "To demonstrate reasonable diligence, a plaintiff must establish[] that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Id.* (alteration in original) (quoting *Mest v. Cabot Corp.*, 449 F.3d 502, 511 (3d Cir. 2006)). Because the application of the discovery rule is fact-specific, "at summary judgment [the plaintiff has] the burden of submitting evidence that would create genuine issues of material fact regarding when it discovered the [injury] and whether it should have discovered the [injury] earlier if it had exercised reasonable diligence." *United Corp. v. Hamed*, 64 V.I. 297, 307 (2016).

The Court first identifies the alleged injury and its cause. The alleged injury is the loss of interest in the home[6] constructed on the Frydenhoj Property that Annette occupied beginning in 1995 and where Sherrod lived with her from 2006 to 2009. (Annette R.J. Phillips Aff. ¶¶ 41–44, ECF No. 84-2.) The alleged cause, in broad strokes, is that Defendant removed Annette from the existing mortgage and/or declined to offer her an opportunity to refinance. Plaintiffs' allegations that Defendant improperly relied on an erroneous credit report to wrongfully remove Annette

---

[6] Plaintiffs do not specify the nature of the interest they believe the mortgage conveyed or supported in the home on the Frydenhoj Property. Virgin Islands law applies a lien theory of mortgages, meaning a mortgage loan does not affect legal title to the property. (Def.'s Reply at 5–6, 6 n.3.) Plaintiffs concede that Angelita Jennings holds title to the Frydenhoj Property as sole owner. (*See* Annette R.J. Phillips Dep. 75:7–24.) Plaintiffs suggest that a judge in connection with the eviction proceedings determined that Annette held an equitable interest in the home. (*See, e.g.*, Pls.' Ex. 5, Annette R. Jennings-Phillips Banking Complaint Form, ECF No. 86 ("In 2009, Judge Carroll ruled that I was due equity in the home regardless and should have been notified by the bank."); Annette R.J. Phillips Aff. ¶ 50.) However, Plaintiffs have failed to allege how the 1994 Mortgage and subsequent modifications affected their equitable interest.

from the mortgage, while utilizing her financial information to support a loan to her mother (*id.* ¶¶ 47, 49, 55–56), are immaterial to defining the injury and its cause for the purposes of the discovery rule. *See Oshiver*, 38 F.3d at 1391 (holding that employee was aware of her injury and its cause for discovery rule purposes as soon as she was fired, regardless of when she learned she "may have been deceived regarding the underlying motive behind her discharge"). No individual injury is alleged on behalf of Plaintiff Sherrod Phillips; the Court extrapolates that the claimed injury is the loss of the right to live in his marital home.[7]

The Court is reticent to find that this case is "one of those exceptional cases where the injury or its cause was not immediately known to the victim, as is required for application of the 'discovery rule' to the statute of limitations." *Santiago*, 57 V.I. at 298; *see Burton v. First Bank of P.R.*, 2007 WL 2332084, at *4 (V.I. Super. Ct. July 19, 2007) ("This case does not warrant application of the Discovery Rule because Plaintiff has not sustained a latent injury or an injury that would be difficult to ascertain."). However, even applying the discovery rule and construing all reasonable inferences and doubts in Plaintiffs' favor, by 2005 Plaintiffs should have discovered the injury and its cause through the exercise of reasonable diligence.

---

[7] It is undisputed that Plaintiff Sherrod Phillips was never a party to the 1994 Mortgage or any modification thereafter. The only claim remaining on behalf of Plaintiff Sherrod Phillips is the claim for unjust enrichment. In order to prove unjust enrichment, a plaintiff must show: "(1) that the defendant was enriched; (2) that such enrichment was at the plaintiff's expense; (3) that the defendant had appreciation or knowledge of the benefit; and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or property to the plaintiff." *Walters v. Walters*, 60 V.I. 768, 776 (2014). Plaintiffs have not alleged any facts to suggest that Defendant FirstBank was enriched at Sherrod Phillips's expense. Plaintiffs allege that Plaintiff Annette R.J. Phillips, alone, paid Defendant for six years after her obligation was discharged through the September 2003 Release of Mortgage. (*See* Pls.' Suppl. SMF ¶ 7; Annette R.J. Phillips Dep. 88:9–90:21; Annette R.J. Phillips Aff. ¶ 47; Pls.' Ex. 3, ECF No. 84-3 (mortgage payment checks and receipts).) Accordingly, regardless of the applicable statute of limitations, on these facts the claim for unjust enrichment by Plaintiff Sherrod Phillips fails as a matter of law.

It is undisputed that in June 2003 Plaintiff Annette R.J. Phillips applied for a refinancing of the 1994 Mortgage with her mother, Angelita, and signed a series of loan application documents. (Def.'s SMF ¶¶ 7–8; Annette R.J. Phillips Dep. 30:2–31:8, 31:15–34:12.) In September 2003, Annette was present at the closing of the new mortgage, witnessed her mother's signature as sole borrower, and signed the 2003 Mortgage as a witness. (Pls.' Suppl. SMF ¶ 11; Annette R.J. Phillips Dep. 35:8–20, 36:9–11.) Accepting as true that Annette did not understand the specifics of what she was signing, Annette was nevertheless on notice to determine her rights and obligations with respect to the 2003 Mortgage. (*See* Def.'s Br. at 9 ("At the very least, Plaintiff's attendance at closing and her signature as a witness on the 2003 Mortgage loan documents put her on notice that the Subject Property was being used as collateral for [a] new mortgage loan, which are facts that would lead a reasonable person to inquire as to the status of any prior loans and as to their own responsibility for repaying the new mortgage loan.").)

It is further undisputed that, in preparing her 2003 taxes, an H&R Block employee informed Annette that her mortgage interest statement only reflected her mother's name as mortgagor. (Def.'s SMF ¶ 13; Annette R.J. Phillips Dep. 52:8–55:19.) Annette realized this was a change from her pre-2003 mortgage interest statements, but nevertheless accepted her mother's explanation that the bank had simply changed how it was doing things. (Annette R.J. Phillips Dep. 52:8–20, 53:3–20, 56:7–23.) As soon as Annette received this mortgage interest statement, she should have realized that something had changed with respect to her mortgage. Even giving Plaintiffs the benefit of an additional year to find accrual of the causes of action at issue here, Annette was again advised by her tax preparer in 2005, "[T]here is something going on with that bank and your mother. You need to find out cause you need the documents. . . . [Y]ou need the right documents." (Annette R.J. Phillips Dep. 89:11–16 (recalling conversation with tax preparer).) Instead, Annette continued to make mortgage payments until 2009, "and the record is

12

devoid of any diligent inquiry by her" to determine why her mortgage was no longer in her name. *Burton*, 2007 WL 2332084, at \*4. Annette's subjective belief does not create a genuine dispute as to her knowledge sufficient to alter the date of accrual. (Def.'s Reply at 3.)

Based on the totality of the undisputed facts, under an objective standard Plaintiffs failed to exercise reasonable diligence. Annette's presence at the September 2003 closing, witness signature on the 2003 Mortgage, and repeated advisements by her tax preparer that something was awry with her mortgage put her on notice, no later than 2005, that her interest as mortgagor was affected. Had Annette exercised reasonable diligence, whether by asking Defendant the status of her own obligations or investigating the recorded documents in connection with the Frydenhoj Property, Annette would have discovered that a Release of Mortgage dated September 17, 2003 had been recorded on September 30, 2003, the same day her mother's new 2003 Mortgage was also recorded. Her failure to take any such steps defeats any claim of reasonable diligence.

Plaintiffs have presented argument and evidence in opposition to summary judgment to establish the timing of Annette's knowledge of the alleged legal wrongdoing. (*See, e.g.*, Pls.' Br. at 7–11 (discussing when Plaintiffs learned of Defendant's reliance on an allegedly erroneous credit report in denying Annette's application for a streamline refinance); *id.* at 15 ("The record shows that Annette did not realize her legal injury until after she initiated an investigation into the discrepancies with the mortgage documents.").) Unfortunately, this evidence is irrelevant to the application of the discovery rule. *See Oshiver*, 38 F.3d at 1386 ("[A] claim accrues . . . upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong."). The Court finds that the statute of limitations began to run in 2005 at the latest, making the 2013 filing of the Complaint beyond the applicable six-year limit. Accordingly, the Court need not

consider Defendant's alternative arguments on the merits of Plaintiffs' claims. The Court grants
summary judgment to Defendant FirstBank.

II.    Motion to Amend

Plaintiffs seek to amend their Complaint to allege that Defendant FirstBank violated a
series of federal statutes in (1) denying Annette a refinancing on the basis of an erroneous credit
report and (2) failing to inform her about the nature of their denial before issuing a new mortgage
to her mother as sole borrower. (*See* Pls.' Mot. Amend at 2–3, ECF No. 89.)[8] Defendant counters
that Plaintiff's motion is untimely under the Court's scheduling order (Def.'s Br. Opp'n to Pls.'
Mot. Amend at 2–3, ECF No. 93); amendment is futile because all of the proposed new claims
are barred by applicable statutes of limitations (*id.* at 4–7); and amendment is futile because the
proposed additions fail to state any claim upon which relief can be granted (*id.* at 7–9).

The Court considers the Motion despite allegations of untimeliness. Although the Court
is sympathetic to the Plaintiffs' circumstances, Plaintiffs' proposed amended complaint is
woefully deficient under the federal pleading standard and must be denied as futile. Plaintiffs
allege violations of the Truth in Lending Act; Real Estate Settlement Procedures Act; Equal
Credit Opportunity Act; Fair Credit Reporting Act; Home Ownership Equity Protection Act; and
mortgaged related provisions of the Omnibus Appropriations Act of 2009. As Defendant
highlights in opposition, Plaintiffs largely fail to specify particular statutory sections that
Defendant's conduct allegedly violated, and the few specific subsections which are cited either

---

[8] The proposed amended complaint also includes new allegations regarding causes of action
which the Court has already adjudged in Defendant's favor. The new allegations in the proposed
amended complaint do not disturb the Court's earlier conclusions herein regarding the viability
of the breach of contract, breach of the implied covenant of good faith and faith dealing, or
unjust enrichment claims, nor do they disturb the Court's early decision awarding Defendant
judgment on the pleadings on all tort claims. Leave to amend and renew those causes of action,
as well as assert a new tort cause of action for conversion, is denied because the claims are futile
based on the applicable statutes of limitations.

did not exist in law at the time of the alleged offending conduct in 2003 or do not create private rights of action. (*See* Def.'s Br. Opp'n to Pls.' Mot. Amend at 7–8.) Without identifying specific provisions that have been breached by Defendant's conduct, Plaintiffs have failed to state a claim upon which relief can be granted.

Additionally, each of these federal statutes carries an even shorter statute of limitations than the six-year limit already explored herein, ranging from one to three years. (Def.'s Br. Opp'n to Pls.' Mot. Amend at 5–6.) Plaintiffs argue that the Discovery Rule should define the date of accrual as July 2017 because Annette only discovered the cause of her injury at her deposition when she learned that her refinance application was denied in 2003 on the basis of an allegedly erroneous credit report. (Pls.' Mot. Amend at 2–3.) This argument is unavailing, as the Court has already noted, because the Discovery Rule is not tied to knowledge of one's legal injury. *See Oshiver*, 38 F.3d at 1386.

Even if the Court views the injury as distinct from the previous causes of action, and thus stretches the time period under the Discovery Rule to find that Annette was only on notice of her injury upon receiving her Equifax report in 2008, all of the pertinent statutes of limitations would have lapsed by the end of 2011. Had Plaintiff exercised reasonable diligence to determine the status of her mortgage in 2008, she would have discovered that the bank denied her refinance in 2003 on the basis of her credit report. Therefore, all of the federal statutes of limitations had run by 2011. Accordingly, amending the Complaint would be futile, and leave to amend is denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. Plaintiffs are denied leave to amend their complaint. An appropriate order will follow.

Date: 2/9/18

ANNE E. THOMPSON, U.S.D.J.

15