NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

ANNETTE R.J. PHILLIPS and SHERROD PHILLIPS,

    Plaintiffs,

v.

FIRSTBANK PUERTO RICO,

    Defendant.

Civ. No. 13-105

**OPINION**

THOMPSON, U.S.D.J.[1]

## INTRODUCTION

This matter comes before the Court upon Plaintiff's Motion for Reconsideration.[2] (ECF No. 112.) Defendant opposes. (ECF No. 117.) The Court has decided the Motion based on the written submissions of the parties, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Plaintiff's Motion for Reconsideration is denied.

## BACKGROUND

As the parties are familiar with the facts in this case, the Court provides a briefer recitation of the facts than in prior opinions.[3] Plaintiffs Annette R.J. Phillips ("Annette") and Sherrod Phillips (collectively "Plaintiffs"), a married couple, are citizens and residents of the Virgin Islands, and Defendant FirstBank Puerto Rico ("FirstBank" or "Defendant") is a Puerto

---

[1] The Hon. Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

[2] The pending Motion for Reconsideration appears to have been filed only on behalf of Annette Phillips, and not her husband Sherrod Phillips, who was once a plaintiff in this action. The Court presumes that the parties therefore accept the portion of the Court's February 9th Opinion which found all claims asserted by Sherrod Phillips failed. (*See* Op. at 11 n.7, ECF No. 98.)

[3] The Court adopts the fuller factual recitation of its February 9th Opinion on Defendant's Motion for Summary Judgment and Plaintiffs' Motion to Amend. (Op. at 1–7, ECF No. 98.)

1

Rican corporation with a principal place of business in Puerto Rico. (Compl. ¶¶ 1, 3, ECF No. 1). This case concerns Plaintiffs' allegations that Defendant relied on an erroneous credit report to find Annette ineligible for a refinancing of her 1994 mortgage and/or wrongfully terminated her existing mortgage through acts of fraud.

In her Complaint, Annette disclaimed knowledge of the refinancing and alleged that her signature was forged on mortgage documents from 2003. (Compl. ¶¶ 9–10 ("[Annette] had no knowledge of the refinancing although her name and signature appeared on the application documents. . . . [T]he name and signature were not hers and must have been forged.").) In her deposition, however, Annette verified the authenticity of her signature on page three of the 2003 Uniform Residential Loan Application ("URLA") as well as the accompanying forms and disclosures. (Def.'s SMF ¶¶ 7–8, ECF No. 73; Annette R.J. Phillips Dep. 30:2–31:8 (verifying URLA signature), 31:15–34:12 (verifying the appearance of her signature on all other documents, but reiterating she did not recall signing some), ECF No. 85.) Further, Annette was personally present at the closing of the new mortgage and signed the new mortgage as a witness to the signature of her mother, Angelita, the sole borrower. (Def.'s SMF ¶ 10; Annette R.J. Phillips Dep. 35:8–20, 36:9–11, 110:21–112:8.)

Though Annette remained unaware of exactly what transpired in 2003, it was clear to her that something had changed. At the request of her tax preparer at H&R Block in 2003, Annette obtained a copy of a mortgage interest statement from Angelita. (Def.'s SMF ¶ 13; Annette R.J. Phillips Dep. 52:8–55:19.) Unlike statements from prior years, the 2003 mortgage interest statement only had Angelita's name on it. (Def.'s SMF ¶ 13; Annette R.J. Phillips Dep. 52:8–14, 53:3–20.) Annette recalls her mother giving her the 2003 statement and telling her with regard to her taxes, "put it in half" and "that's the way the bank does it now." (Def.'s SMF ¶ 13; Annette R.J. Phillips Dep. 52:8–20, 56:7–23.) Annette was again advised by her tax preparer in 2005,

2

"[T]here is something going on with that bank and your mother. You need to find out cause you need the documents. . . . [Y]ou need the right documents." (Annette R.J. Phillips Dep. 89:11–16 (recalling conversation with tax preparer).)

Plaintiffs filed their Complaint in 2013 against Defendant FirstBank, alleging (1) breach of contract, (2) fraud, (3) negligence, (4) breach of the implied covenant of good faith and fair dealing, and (5) unjust enrichment. (Compl. ¶ 20.) On June 2, 2017, this Court entered partial judgment on the pleadings in favor of Defendant, dismissing Plaintiffs' tort claims for fraud and negligence because the two-year statute of limitations had run and dismissing Plaintiff Sherrod Phillips's claims for breach of contract and breach of the implied covenant of good faith and fair dealing because he never had a contractual relationship with Defendant FirstBank. (ECF Nos. 47, 48.) On August 15, 2017, Defendant made a post-discovery motion for summary judgment. (ECF Nos. 72–74.) At summary judgment, all that remained were Annette's claims for breach of contract and breach of the implied covenant of good faith and fair dealing and both Plaintiffs' claims for unjust enrichment.

By opinion and order dated February 9, 2018, this Court granted Defendant's Motion for Summary Judgment, finding that all of Plaintiffs' claims were barred by the applicable six-year statute of limitations for contract-related claims. (*See* ECF Nos. 97, 98.) Viewing the facts in the light most favorable to the Plaintiffs—the nonmoving parties—and construing all inferences in their favor, the Court declined to find that Plaintiff Annette R.J. Phillips's witness signature on her mother's 2003 mortgage marked the accrual of her claims and the date from which the statute of limitations began to run. (Op. at 11, ECF No. 98.) However, applying the discovery rule, the Court found that Annette should have known through the exercise of reasonable diligence about her injury and her contract-related claims by 2005, such that the statute of limitations expired by 2011. (Op. at 11–14.) The Court also denied Plaintiffs' Motion to Amend, finding the proposed

3

new federal claims barred by applicable statutes of limitations and, further, futile as unable to survive a Rule 12(b)(6) motion to dismiss. (Op. at 14–15.)

On February 23, 2018, within the fourteen-day window prescribed by the Local Civil Rules, Plaintiff Annette Phillips filed an "Ex Parte" Motion for Reconsideration. (ECF No. 106.) Finding no reason why this motion need be considered on a sealed or ex parte basis, the Court administratively terminated the motion and asked Plaintiff to re-file it without seal. (ECF No. 109.) Plaintiff re-filed the motion on March 7, 2018. (ECF No. 112.) Defendants filed opposition on March 21, 2018. (ECF No. 117.) The Court now considers the Motion.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.3, a motion for reconsideration may be based on one of three grounds: (1) an intervening change in controlling law; (2) availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). "Such motions are not substitutes for appeals, and are not to be used as 'a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not.'" *Cabrita Point Dev., Inc. v. Evans*, 2009 WL 3245202, at *2 (D.V.I. Sept. 30, 2009) (quoting *Bostic v. AT&T of the V.I.*, 312 F. Supp. 2d 731, 733 (D.V.I. 2004)). Rather, reconsideration is an "extraordinary" remedy. *Bostic*, 312 F. Supp. 2d at 733.

## DISCUSSION

I.    Motion for Summary Judgment

Plaintiff seeks reconsideration of the Court's disposition of Defendant's Motion for Summary Judgment "to correct clear error or prevent manifest injustice" because "the Court has creating [sic] undue hardship on the plaintiff." (Pl.'s Br. at 1, ECF No. 112.) Plaintiff argues that

4

(i) the court improperly resolved factual issues better left to a jury (*see id.* at 2–6); and (ii) Plaintiff's evidence raised genuinely disputed material facts that should have prevented summary judgment (*id.* at 6–9). Neither argument is appropriate on a motion for reconsideration, which serves a distinct purpose from an appeal. Nevertheless, the Court will briefly address them.

Plaintiff first argues that the Court should have left the question of knowledge of her injury for a jury to decide.[4] Plaintiff continues to argue, as she did in opposition to summary judgment, that she could not "appreciate her injury until 2012." (Pl.'s Br. at 3; *see also id.* at 5 ("It was not until she initiated an investigation and got the report that she knew she was legally harmed."); *id.* at 9 ("The record shows that Annette did not realize her legal injury until after she initiated an investigation . . . .").) The Court reiterates that the standard for operation of the discovery rule is when the plaintiff knew, or through the exercise of reasonable diligence should have known, that she was actually injured. *See In re Tutu Wells Contamination Litig.*, 909 F. Supp. 980, 984 (D.V.I. 1995); *see also Santiago v. V.I. Hous. Auth.*, 57 V.I. 256, 273 (2012).

Plaintiff's contentions are not responsive to this standard in two ways. First, the Court accepted Annette's testimony that she did not fully understand what happened here until 2012 (Op. at 5, 12. *But see* Pl.'s Br. at 3 (suggesting the Court improperly resolved disputed facts and discounted Plaintiff's testimony)); however, that testimony does not create a genuine dispute of

---

[4] Plaintiff appears to be somewhat confused by the Court's holding. Plaintiff twice suggests that the Court declined to apply the discovery rule in its summary judgment opinion. (*See* Pl.'s Br. at 3 ("in finding that the discovery rule did not apply"); *id.* at 5–6 ("The Court erred in finding that Annette should have known that her rights were infringed at the time she signed the documents.").) Despite some hesitance, the Court did apply the discovery rule, finding that the totality of facts between 2003 and 2005 (Annette's signature, her in-person witnessing of her mother's mortgage, and the repeated advisements by her tax preparer) put her on notice to investigate her rights with respect to her mortgage by 2005. (*See* Op. at 11 ("However, even applying the discovery rule and construing all reasonable inferences and doubts in Plaintiffs' favor, by 2005 Plaintiffs should have discovered the injury and its cause through the exercise of reasonable diligence."); *id.* at 12–14.)

5

material fact because Plaintiff has failed to adduce evidence showing why she could not have discovered her injury earlier had she exercised reasonable diligence. *See United Corp. v. Hamed*, 64 V.I. 297, 307 (2016) ("[A]t summary judgment [the plaintiff has] the burden of submitting evidence that would create genuine issues of material fact regarding when it discovered the [injury] and whether it should have discovered the [injury] earlier if it had exercised reasonable diligence."). Second, though Plaintiff seems to concede that the Court properly focused on actual injury instead of legal injury (Pl.'s Br. at 3–4), she nonetheless repeatedly highlights her knowledge of *legal* injury (*id.* at 3, 5, 9), which is immaterial to operation of the discovery rule. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994) ("[A] claim accrues . . . upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong."). The Court properly applied the discovery rule, as is permissible on a motion for summary judgment, and Plaintiff's contentions to the contrary can be addressed on appeal. Therefore, there is no manifest injustice, and reconsideration on this ground is denied.

Plaintiff next argues that material issues of fact persist regarding the merits of her claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment (which she appears to argue as a breach of fiduciary duty (*see* Pl.'s Br. at 7–8)). Because the Court declines to reconsider its application of the discovery rule, the prior holding finding all of Plaintiff's claims barred by the applicable six-year statute of limitations has not been disturbed.[5] Accordingly, the Court declines to consider Plaintiff's arguments on the merits of her claims. Reconsideration of the Court's disposition of summary judgment is denied.

---

[5] Plaintiff further argues that "The court did not consider the entire record. For example, the 30(b)(6) deposition of the defendant is completely absent from the analysis." (Pl.'s Br. at 9.) As an initial matter, the Court notes that "[a]n argument may be regarded as having been considered if it is presented to the court in written submissions and in oral argument." *U.S. ex rel. Simpson v. Bayer Corp.*, 2015 WL 3618295, at *2 (D.N.J. June 9, 2015); *see also Williams v. Ranger Am. of the V.I., Inc.*, 2017 WL 3219480, at *2 (D.V.I. July 28, 2017); *Ashton v. AT&T Corp.*, 2006

6

II.  Motion to Amend

Plaintiff's argument in favor of reconsideration of her motion for leave to amend focuses on issues of timeliness and delay. (*See* Pl.'s Br. at 9–12.) This argument is not responsive to either the standard on a motion for reconsideration or the Court's reasoning in its February 9th Opinion. (*See* Op. at 14–15.) The Court did not deny leave to amend on the basis of any prejudice to Defendant or delay on the part of Plaintiff. Rather, the Court found that amendment was futile because the statutes of limitations of the newly asserted claims had all expired and the new claims likewise failed to state a claim upon which relief can be granted. Plaintiff has not presented new evidence or controlling law the Court overlooked or misapplied. Reconsideration is therefore denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration is denied. An appropriate order will follow.

Date: April 2, 2018

ANNE E. THOMPSON, U.S.D.J.

---

WL 6909588, at *2 (D.N.J. Feb. 2, 2006). The Court did consider this evidence, but the Court's Opinion did not cite this deposition because it did not bear on the dispositive question: the timing of Plaintiffs' knowledge of injury. Nothing in the 30(b)(6) deposition amounted to a genuine dispute of material fact as to Annette's knowledge or exercise of reasonable diligence.

7