NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

ANNETTE R.J. PHILLIPS and SHERROD PHILLIPS,

    Plaintiffs,

v.

FIRSTBANK PUERTO RICO,

    Defendant.

Civ. No. 13-105

OPINION

THOMPSON, U.S.D.J.[1]

## INTRODUCTION

This matter comes before the Court upon Defendant's renewed Motion for Sanctions (ECF Nos. 101, 102) and Motion for Attorney Fees and Costs (ECF Nos. 104, 105). Plaintiff opposes both Motions. (ECF Nos. 103, 110, 111, 115.) The Court has decided the Motions based on the written submissions of the parties, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Defendant's Motion for Sanctions is granted in part, and Defendant's Motion for Attorney Fees and Costs is denied.

## BACKGROUND

As the parties are familiar with the facts of this case, the Court provides a brief recitation of the facts and procedural history relevant to the pending motions.[2] Plaintiffs Annette R.J. Phillips ("Annette") and Sherrod Phillips (collectively "Plaintiffs"), a married couple, were citizens and residents of the Virgin Islands at the time of filing this lawsuit, and Defendant

---

[1] The Hon. Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

[2] The Court adopts the fuller factual recitation of its February 9th Opinion on Defendant's Motion for Summary Judgment and Plaintiffs' Motion to Amend. (Op. at 1–7, ECF No. 98.)

1

FirstBank Puerto Rico ("FirstBank" or "Defendant") is a Puerto Rican corporation with a principal place of business in Puerto Rico. (Compl. ¶¶ 1, 3, ECF No. 1). On November 9, 2013, Plaintiffs filed their Complaint alleging (1) breach of contract, (2) fraud, (3) negligence, (4) breach of the implied covenant of good faith and fair dealing, and (5) unjust enrichment. (*Id.* ¶ 20.) Annette alleged that her mortgage was refinanced without her participation, that she had no knowledge of the refinancing until 2009 (*id.* ¶¶ 7–12), and that her signature was forged on the 2003 mortgage documents (*id.* ¶ 10 ("[T]he name and signature were not hers and must have been forged."), which she says extinguished her interest in the property. Defendant answered Plaintiffs' Complaint on April 28, 2014. (ECF No. 21.) On June 11, 2014, Defendant moved for judgment on the pleadings (ECF Nos. 25, 26), and, at Defendant's request (ECF No. 27), discovery was stayed for almost three years while the motion remained pending (ECF No. 34).

The case was transferred to Judge Anne E. Thompson on April 4, 2017. (ECF No. 35.) After a hearing on May 2, 2017 (ECF No. 38; *see also* ECF No. 70 (Official Transcript of May 2nd hearing)), on June 2, 2017 this Court entered partial judgment on the pleadings in favor of Defendant. (ECF Nos. 47, 48.) Applying the discovery rule, the Court dismissed Plaintiffs' tort claims for fraud and negligence because the two-year statute of limitations had elapsed by 2011 at the latest (Op. at 5, ECF No. 47); the Court also dismissed Plaintiff Sherrod Phillips's claims for breach of contract and breach of the implied covenant of good faith and fair dealing because he never had a contractual relationship with Defendant FirstBank. (*Id.* at 6.)

On August 15, 2017, Defendant made a post-discovery motion for summary judgment. (ECF Nos. 72–74.) The same day, Defendant filed a motion for sanctions. (ECF Nos. 75, 76.) After a status conference on August 17, 2017, this Court deferred ruling on Defendant's Motion

for Sanctions and administratively terminated the Motion,[3] giving Defendant leave to re-file it after the Court decided the pending summary judgment motion. (*See* ECF Nos. 77, 78.)

At summary judgment, all that remained were Annette's claims for breach of contract and breach of the implied covenant of good faith and fair dealing and both Plaintiffs' claims for unjust enrichment. On February 9, 2018, this Court granted Defendant's Motion for Summary Judgment, finding that all of Plaintiffs' claims were barred by the applicable six-year statute of limitations for contract-related claims. (*See* ECF Nos. 97, 98.) Despite allegations of forgery in her Complaint, Annette verified in her deposition that her authentic signature appeared on page three of the 2003 Uniform Residential Loan Application ("URLA") as well as the accompanying forms and disclosures. (Annette R.J. Phillips Dep. 30:2–31:8 (verifying URLA signature), 31:15–34:12 (verifying the appearance of her signature on all other documents, but reiterating she did not recall signing some), ECF No. 85.) She also confirmed that she was personally present at the closing on her mother's new mortgage and signed the mortgage as a witness.

Giving every favorable inference to the nonmoving party, the Court applied the discovery rule, tolling the date of accrual for two years beyond when Annette signed the mortgage refinancing documents and witnessed her mother close on the new mortgage. By 2005, Annette had twice been advised by her tax preparer that something was awry with her mortgage and she needed to investigate. The Court found that Annette should have known through the exercise of

---

[3] It is significant to the procedural history that this motion was filed under 28 U.S.C. § 1927, and not Rule 11 of the Federal Rules of Civil Procedure. Under Rule 11, "district courts must resolve any issues about imposition of sanctions prior to, or contemporaneously with, entering final judgment." *Gary v. Braddock Cemetery*, 517 F.3d 195, 202 (3d Cir. 2008) ("Requiring Rule 11 motions to be filed before final judgment is entered accomplishes nothing unless we are able to resolve any challenge to the grant or denial of Rule 11 sanctions when we rule on the merits of the final judgment."). However, this "supervisory rule" of the Third Circuit "does not apply where sanctions are sought under § 1927.... [A] motion for sanctions should be filed within a reasonable time." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 102 (3d Cir. 2008); *see also Lewis v. Smith*, 480 F. App'x 696, 699 (3d Cir. 2012).

3

reasonable diligence about her injury and her contract-related claims by 2005, such that the statute of limitations expired by 2011. The Court also denied Plaintiffs' Motion to Amend, finding the proposed new federal claims barred by applicable statutes of limitations and, further, futile as unable to survive a Rule 12(b)(6) motion to dismiss. Annette moved for reconsideration (ECF Nos. 106, 112), which the Court denied on April 2, 2018 (ECF Nos. 119, 120).

On February 13, 2018, after the Court filed its summary judgment decision, Defendant requested leave to re-file its Motion for Sanctions, in keeping with the Court's August 17th Order (ECF No. 77). (ECF No. 99.) By letter order, the Court authorized Defendant to re-file the Motion and directed Plaintiff to file a response. (ECF No. 100.) Defendant filed the Motion on February 20, 2018. (ECF Nos. 101, 102.) That same day, Plaintiffs filed a Notice of Objection to Defendant's Filings. (ECF No. 103.) On February 22, 2018, Defendant separately moved for attorney fees and costs pursuant to 5 V.I.C. § 541(b). (ECF Nos. 104, 105.) Plaintiff opposed the imposition of sanctions (ECF Nos. 110, 111) and an award of attorney fees and costs to Defendant (ECF No. 115). Defendant replied on both Motions. (ECF Nos. 116, 118.) The Court now considers the Motions.

## LEGAL STANDARD

### I. Motion for Sanctions Pursuant to 28 U.S.C. § 1927

To impose sanctions under § 1927, this Court must find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; (4) in bad faith or by intentional misconduct. *Schaefer*, 542 F.3d at 101 (citing *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 278 F.3d 175, 188 (3d Cir. 2002)). The principal purpose of § 1927 is to deter "intentional and unnecessary delay in the proceedings." *Schaefer*, 542 F.3d at 101 (quoting *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.*, 103 F.3d 294, 297 (3d Cir. 1996)). Unlike Rule 11 sanctions, § 1927 is designed to require counsel to pay

4

"excess costs" incurred because of this unnecessary delay. *Id.* at 102. Further, "§ 1927 has been interpreted to impose a continuing obligation on attorneys to dismiss claims that are no longer viable." *Id.* (quoting *Vandeventer v. Wabash Nat'l Corp.*, 893 F. Supp. 927, 845–46 (N.D. Ind. 1995)). Accordingly, such an attorney must "satisfy personally," 28 U.S.C. § 1927, excess costs, expenses, and fees incurred because of the "particular misconduct," *Prudential*, 278 F.3d at 188.

## II. Motion for Attorney Fees and Costs Pursuant to 5 V.I.C. § 541(b)

"Virgin Islands law authorizes a court to award to any prevailing party in a civil action attorneys' fees incurred in prosecuting or defending claims under territorial law." *Smith v. V.I. Port Auth.*, 2013 WL 152178, at *2 (D.V.I. Jan. 11, 2013), *aff'd*, 568 F. App'x 169 (3d Cir. 2014); *see also* 5 V.I.C. § 541(b); *Figueroa v. Buccaneer Hotel, Inc.*, 188 F.3d 172, 183 (3d Cir. 1999). The statute is designed "to indemnify the prevailing party, . . . [who] should not have to bear the legal expenses of demonstrating either that it is not at fault or that it is the victim of another's fault." *Smith*, 2013 WL 152178, at *2 (internal quotations omitted).

To determine whether the requested fees are reasonable, "the Court looks to the body of case law interpreting 5 V.I.C. § 541(b) for guidance . . . ." *Bank of Nova Scotia v. Clarke*, 2017 WL 6453392, at *6 (D.V.I. Dec. 18, 2017). "[T]he Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *Staples v. Ruyter Bay Land Partners, LLC*, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008). The Third Circuit utilizes a two-step approach: "First, the Court determines whether the hours billed were 'reasonably expended,' excluding time billed that is 'excessive, redundant, or otherwise unnecessary.'" *Flagstar Bank, FSB v. Stridiron*, 2013 WL 5941298, at *6 (D.V.I. Oct. 31, 2013) (quoting *Berne Corp. v. Gov't of V.I.*, 2012 WL 369535, at *10 (D.V.I. Feb. 3, 2012)). Second, the Court evaluates the reasonableness of the hourly rate "in comparison to prevailing market rates in the relevant community 'for similar

5

services by lawyers of reasonably comparable skill, experience, and reputation.'" *Flagstar Bank*, 2013 WL 5941298, at *6 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). The party claiming fees bears the burden of establishing that they are reasonable. *Rode*, 892 F.2d at 1183. "[A] litigant's ability to pay is a relevant factor in making an award of fees or costs," and the opposing party's financial circumstances are appropriately considered to potentially reduce the requested fee amount. *Smith*, 2013 WL 152178, at *4. "Whether to award attorney's fees and the amount of any award is within the discretion of the district court[.]" *Addie v. Kjaer*, 836 F.3d 251, 260 (3d Cir. 2016).

## DISCUSSION

Defendant has filed two Motions, seeking alternative relief. (*See* Def.'s Br. Mot. for Costs and Fees at 6 n.4, ECF No. 105.) The Motion for § 1927 sanctions seeks an award of fees and costs incurred after May 2, 2017, the date on which Defendant asserts that Plaintiff's Counsel reiterated false allegations that the refinancing was closed behind Annette's back and without her knowledge; in contrast, the alternative Motion pursuant to 5 V.I.C. § 541(b) seeks reimbursement for all defense costs and fees from the date the Complaint was filed to the date that summary judgment was entered. Given the conduct exhibited in this litigation by Plaintiff and Plaintiff's Counsel, the Court finds an award pursuant to § 1927 is most appropriate, and therefore grants that Motion in part and denies the alternative Motion for fees and costs.

Throughout this litigation, Plaintiff's Counsel has sidestepped dispositive issues and backtracked on verifiable factual matters in an effort to prolong the Court's review of time-barred claims. In the original Complaint, Annette alleged that her signature was forged on the mortgage refinancing documents. (Compl. ¶¶ 9–10 ("[Annette] had no knowledge of the refinancing although her name and signature appeared on the application documents. . . . [T]he name and signature were not hers and must have been forged.").) Despite her own and Counsel's

6

earlier protestations (*see, e.g.*, Compl. ¶¶ 7–12; Tr. 31:5–6, ECF Nos. 70, 102-1 ("May 2, 2017 Tr.") ("[T]he mortgage 2003, that is the document that is fraudulent.")), in her deposition, Annette clarified that her authentic signature did appear on the documents. (Annette R.J. Phillips Dep. 62:22–66:8.)[4]

Based on Annette's own sworn admissions, it has become clear to the Court that Annette's signatures were authentic and, thus, the basis for the Complaint, and the arguments presented to the Court on May 2, 2017 in an attempt to overcome judgment on the pleadings, were untruthful. The efforts of Plaintiff and Plaintiff's Counsel to conceal critical facts from the Court sufficiently establish bad faith. Notably, the 2003 refinancing documents which the Court reviewed and relied on at summary judgment, though presented for the Court's review by Defendants (*see* Def.'s Exs. H–K, ECF Nos. 73-8–73-11), appeared in *Plaintiffs'* initial Rule 26 disclosures filed in July 2014 (*see, e.g.*, ECF No. 31 at 2–3). As far as the Court can discern, for years Plaintiff has possessed documents which she knew reflected her authentic signature and confirmed her presence at the 2003 mortgage closing. Yet Plaintiff's Counsel represented to the Court that the signatures were forged (May 2, 2017 Tr. 31:5–6); or that Annette was ill and medicated and could not remember appearing at the closing or signing the documents;[5] or that

---

[4] Defendant FirstBank has not contested Annette's assertions that she was not told why she was denied the refinancing in 2003 or that the bank failed to present her with the results of her credit check. (*See* Pl.'s Opp'n to Def.'s Mot. Sanctions at 3, 3 n.3, ECF No. 110 (citing Dina Perry Dep. at 17, 113–16, ECF No. 111).) The Court has therefore repeatedly accepted Annette's statement that she did not fully understand what she was signing, which is corroborated by the fact that she continued to submit mortgage payments to Defendant FirstBank through 2009. Her fulsome understanding, however, is irrelevant to when her claims accrued, and Counsel's contrary arguments throughout this case have been misleading to his client and to the Court.
[5] This is a new argument. The Complaint includes no information about any illness, and indeed flatly denies that Annette had any knowledge of the refinancing. (*Compare* Compl. ¶¶ 9–11 ("R.J. had no knowledge of the refinancing although her name and signature appeared on the application documents. R.J. realized that the name and signature were not hers and must have been forged. R.J. also learned that her name was removed from the property without her knowledge."), *with* Pl.'s Opp'n to Def.'s Mot. Sanctions at 3 ("[P]laintiff first stated that because

7

Annette was duped into signing these documents; or that "her mother used a pretext to get her to the bank and she ended up signing a refinancing of the mortgage" (Pl.'s Opp'n to Def.'s Mot. Fees and Costs at 1). This revolving-door defense and after-the-fact reframing of Plaintiff's Complaint is a disingenuous and vexatious cover for the fact that Plaintiff's original contentions were false and made in bad faith.

Defendant FirstBank has requested attorney fees in the amount of $36,570.00 for 146.7 hours of work spent defending this action, as well as $2,924.30 in costs; alternatively, Defendant seeks as a sanction only those fees and costs incurred after May 2, 2017 (i.e., total costs and fees minus the $7,491.50 in fees and $420 in costs incurred up to and including May 2, 2017). Despite Plaintiff's Counsel's arguments on May 2, 2017, in June 2017 the Court dismissed more than half of Plaintiffs' claims—the tort claims brought by each Plaintiff, as well as all contract claims brought by Sherrod Phillips, leaving four out of ten claims remaining. (*See* ECF Nos. 47, 48.) Further, Counsel may not have known that Annette's 2003 signatures were indeed authentic until after Annette's deposition on July 6, 2017; that date represents the point from which the Court finds Counsel was obligated to dismiss the remaining four claims, which were no longer viable, and his subsequent conduct is subject to sanction. All told, applying the § 1927 elements, it is clear that Mr. Russell's post-July 6, 2017 conduct on behalf of Plaintiff Annette R.J. Phillips unreasonably multiplied proceedings and increased the costs of litigation.

Were the Court to instead award fees and costs under Virgin Islands law, the requested fee amount would be reduced by, *inter alia*, line by line analysis of whether the expenditures

---

she was ill and on medication, she was unaware of what actually happened at the refinancing and could not recall how her signature got on the documents. However, by the time of her deposition, she was clearer as to the events and testified accordingly.") *and* Pl.'s Opp'n to Def.'s Mot. Fees and Costs at 2, ECF No. 115 ("[P]laintiff did not fully realize the impact of the event at the bank. She trusted her mother and she was heavily medicated at the time due to an injury.").)

detailed in Defendant's submission were reasonable (*see* ECF No. 105-2); consideration of Plaintiff's present financial circumstances (*see, e.g.*, Annette R.J. Phillips Aff. ¶¶ 55, 57, 60–61, 63, ECF No. 84-2); the fact that Defendant's own motion to stay in 2014 prolonged this action by preventing discovery from continuing while the motion for judgment on the pleadings remained pending; the fact that the claims were all ultimately disposed of based on the statute of limitations, an affirmative defense raised early in the litigation; and the fact that the underlying claims were all ordinary contract and tort causes of action, and therefore "relatively commonplace," *see, e.g., Staples*, 2008 WL 413308, at *2 (citing *Good Timez, Inc. v. Phoenix Fire & Marine Ins. Co.*, 754 F. Supp. 459, 463 (D.V.I. 1991)).

Consequently, the Court finds that, under either theory, $10,000 in attorneys' fees and costs is appropriately awarded to Defendant. Given the particular misconduct at issue, the Court determines it is appropriate to award this amount as a sanction pursuant to § 1927.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Sanctions is granted in part, with relief as modified herein. Defendant's Motion for Attorney Fees and Costs is denied. An appropriate order will follow.

Date: 4/12/18

ANNE E. THOMPSON, U.S.D.J.